**IRVING TRUST COMPANY and Fidelity and Deposit Company of Maryland, Plaintiffs,**

v.

**NATIONWIDE LEISURE CORPORATION, et al., Defendants.**

**No. 79 Civ. 261 (WCC).**

United States District Court, S.D. New York.

Dec. 6, 1983.

See also, D.C., 562 F.Supp. 960; D.C., 95 F.R.D. 51.

Thomas A. Dickerson, New York City, for class defendants.

Larry M. Carlin, New York City, for defendants Nationwide Leisure Corp., Joel Nadel and Stuart Graff.

## OPINION AND ORDER

CONNER, District Judge.

This interpleader action is currently before the Court pursuant to 28 U.S.C.

§ 636(b) for a *de novo* review of a Recommended Decision, dated July 11, 1983, of Magistrate Kent Sinclair, Jr. In that decision, Magistrate Sinclair recommended that this Court deny the motions of class-claimants Low, Reiken and Dupack [1] for partial summary judgment on their claim that the hotels at which travellers were lodged by Nationwide Leisure Corporation ("Nationwide") during the 1977 tour season were not similar to the hotels listed in Nationwide's advertising material.[2] Because this claim involves issues of fact, the motion will be denied.

In advertising its London tours, Nationwide described the included hotel accommodations as "the superior first class Kensington Close, Royal Kensington, Park Plaza Hotel or similar," in the case of the London tours, and "the new superior first class Holiday Inn," in the case of the Munich tours. Class claimants argue that by using the term "superior first class," Nationwide thereby adopted the rating system employed by the Official Hotel & Resort Guide ("OHRG") and was accordingly obligated to provide accommodations rated "superior first class" or better by the OHRG. *See* Reply Memorandum of Class Defendants dated August 26, 1983 at 34, 40. In recommending that the summary judgment motion be denied, Magistrate Sinclair relied upon (1) affidavits submitted by Nationwide stating that it considered factors other than the OHRG ratings in determining the quality of substitute accommodations; (2) the affidavit of Arthur Frommer, a noted travel expert, stating that at least 40 of the substituted hotels were, during 1977, "similar" to the listed hotels; and (3) the fact that OHRG ratings represent only the opinion of the editor and are

---

1. In a decision dated June 1, 1982, this Court certified four classes in this interpleader action. The Low and Reiken classes include travellers on Nationwide's tours to London during 1977; the Dupack class includes travellers on Nationwide's tours to Munich during approximately the same period; and the Klakis class includes participants in a Nationwide tour to Paradise Island and Nassau during early 1978. Only the Low, Reiken and Dupack classes are involved in the instant motion.

2. The motion also included a request to strike the fourth affirmative defense of Nationwide, Joel Nadel and Stuart Graff, which alleges that the alternate hotels used by Nationwide were similar to the advertised hotels. Magistrate Sinclair correctly recognized that this aspect of the motion is directly analogous to the summary judgment aspect.

not always based upon actual visits to the hotels. *See* Recommended Decision at 4–5. While I agree with the Magistrate that these factors create disputed factual issues mandating the denial of summary judgment on the question whether the substituted hotels were, during 1977, similar to the listed hotels, the Recommended Decision does not meet class claimants' threshold argument, raised before this Court, that Nationwide was contractually bound to deliver accommodations in accordance with OHRG classifications.

Under class claimants' contractual theory, it is irrelevant whether the substituted hotels were, in fact, similar to the listed hotels, the sole inquiry being whether the substitutes were deemed comparable under the OHRG rating system to the "superior first class" accommodations promised. Thus, if this argument is accepted, questions surrounding what factors Nationwide relied upon in determining the comparability of alternate hotels and the opinions of other experts concerning the quality of the substituted accommodations would not preclude the granting of summary judgment, for this Court could mechanically apply the OHRG rating system, inaccurate though it may be, as the final, contractually-mandated arbiter of comparable quality. In asking the Court to interpret the agreement between Nationwide and its travellers as incorporating the OHRG ratings, class claimants rely upon admissions of Nationwide and its principals, including statements to government agencies, evidence of trade usage, and the fact that OHRG is the only travel guide to use the classification "superior first class." However, other factors persuade the Court that this argument is untenable, or, at minimum, that the issue whether the OHRG ratings were incorporated by reference itself involves questions of fact which preclude summary judgment.

First, although OHRG may indeed be the only travel guide to employ the classification "superior first class," it is quite another thing to say that by using that term in its brochure, Nationwide necessarily adopted the opinions of the OHRG and became bound, as presumably did all travellers booking a Nationwide tour, by that guide's ratings. No reference is made in any of Nationwide's advertising brochures to the OHRG. Consequently, it is probably unreasonable to assume that an unsophisticated traveller somehow understood "superior first class" to have referred to the OHRG, a guidebook about which he may never have heard. Even if it is arguable that all parties should have known that the term "superior first class" had a special trade meaning and referred to the OHRG, that question is itself a disputed issue of fact.

Moreover, class claimants apparently overlook the incongruity which would arise if their interpretation of Nationwide's obligation was correct. According to the OHRG's own ratings, none of the three specified London hotels—the Kensington Close, Royal Kensington, or Park Plaza— was itself rated as highly as "superior first class." According to the 1977 OHRG, the Kensington Close is rated as a "modern first class" hotel, the Royal Kensington is listed as a "first class commercial hotel," and the Park Plaza is considered an "impressive first class" hotel. *See* Ex. C to Dickerson Aff. dated July 1, 1983. Thus, use of OHRG's "superior first class" rating as a benchmark for measuring the comparability of substituted hotels is itself inconsistent with the specific hotels listed in Nationwide's brochures.

On the current state of the record, the Court concludes that the appropriate inquiry is not whether the substituted hotels were "superior first class" hotels, but whether they were of similar quality to the hotels specifically listed in Nationwide's tour literature.[3] As Magistrate Sinclair aptly recognized, this issue is inherently factual and hotly disputed by the parties, and therefore is not susceptible of summa-

---

3. Under this inquiry, while the possibility that the phrase "superior first class" is an inaccurate characterization or a misrepresentation of the type of accommodations being offered may it-self give rise to a claim against Nationwide, it cannot be dispositive of whether the substituted hotels were similar to those listed.

264

ry judgment. Accordingly, class claimants' motion is denied.

SO ORDERED.